# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heather Trotman,                          :
                    Petitioner            :
                                          :
          v.                              :    No.  188 C.D. 2025
                                          :
Chester County Intermediate Unit          :
(Pennsylvania Department of               :
Education),                               :
                    Respondent            :    Argued: October 7, 2025


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MATTHEW S. WOLF, Judge


**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE WOLF                                     FILED:  November 4, 2025


          Heather Trotman (Trotman) petitions for this Court's review of the Secretary of Education's (Secretary) January 15, 2025 order dismissing her appeal from her termination by Chester County Intermediate Unit (CCIU).  The Secretary denied Trotman's appeal on the basis that it lacked jurisdiction to hear her appeal under the Public School Code of 1949[1] (School Code), finding that Trotman was not a professional employee as defined in Section 1101 of the School Code, 24 P.S. § 11-1101, and therefore did not have the protections of tenure.  Upon review, we find that the Secretary based her findings as to Trotman's employment upon substantial

---

[1] Act of March 10, 1949, *as amended*, 24 P.S. §§ 11-101 to 27-2702.

evidence and therefore did not err in dismissing her appeal for a lack of jurisdiction. Accordingly, we affirm.

## I. BACKGROUND

Trotman was employed by CCIU as a Daycare Center Director from 2005 to 2024. The daycare operated by CCIU serves infants and toddlers from 6 weeks to 3 years old. On May 14, 2024, a CCIU administrator informed Trotman of an incident involving potential child abuse. In what the CCIU alleged is a violation of organizational and industry standards, Trotman did not inform her superior, the Childline and Abuse Registry (Childline),[2] or the Department of Human Services. By way of letter sent May 30, 2024, CCIU informed Trotman that it had charged her with willful neglect of her duties and would recommend her termination to its board of directors. On June 11, 2024, Trotman mailed a letter to CCIU requesting a hearing to contest her dismissal. The CCIU denied Trotman's request on the stated basis that she was not entitled to a hearing as a professional employee protected by the tenure provisions in Subarticle XI(c) of the School Code (Tenure Provisions).[3] On June 20, 2024, the CCIU board of directors voted to terminate Trotman's employment, and CCIU informed Trotman of same by way of letter dated June 21, 2024. On July 5, 2024, Trotman appealed her dismissal to the Secretary. On August 5, 2024, the CCIU filed a Motion to Dismiss Trotman's appeal, and Trotman filed her opposition to such motion on August 19, 2024. The appointed hearing officer dismissed the motion without prejudice.

---

[2] Childline is a free hotline that may be used to report suspected child abuse or neglect to the Department of Human Services. *See* 55 Pa. Code § 3490.4.

[3] Sections 1121-1133 of the School Code, 24 P.S. §§ 11-1121 to 11-1133.

The Secretary held two hearings to determine if Trotman was a professional employee, and thus entitled to protections under the Tenure Provisions.[4] At the hearings, two witnesses testified: Trotman and CCIU Assistant Director Tamara Acuna. Various documents were also admitted into evidence, including the description for the position held by Trotman, standards and manuals relevant to the CCIU daycare program, and classroom schedules for the infant and toddler programs at the daycare.

In her testimony, Trotman described the various aspects of her employment with CCIU, as well as the tasks she undertook to support classroom staff, keep abreast of and in compliance with various programs and regulations, and ways in which she interacted with the staff and children. Trotman also testified that she had various teaching certificates, and the nature of each. When asked what percentage of her time she spends on direct educational activities, she testified that that "70 to 75 percent of [her] time [was spent] either directly interacting with children in learning experiences, or supervising staff, or coaching/mentoring." Reproduced Record (R.R.) at 93a-94a.

Ms. Acuna testified next. She testified that she was Trotman's supervisor at CCIU and testified as to the nature and requirements of the position held by Trotman, including the programs and initiatives that Trotman was tasked with overseeing. She also testified as to the standards and curricula implemented for the infant and toddler programs, as well as where those standards and curricula came from. She also described the general activities that occur in the infant and toddler programs as well as which staff were responsible for what tasks in the

_____

[4] The protections of the Tenure Provisions grant the Secretary jurisdiction to hear a professional employee's termination appeal. 24 P.S. § 11-1131.

3

daycare center. On cross-examination, Ms. Acuna conceded that she could not state that Trotman's testimony regarding her allocation of time was incorrect.

The Secretary ultimately concluded that Trotman was not a professional employee of CCIU, in part based upon the conclusion that "even if [she] engaged in occasional direct education activities in her work at CCIU, there is insufficient evidence in the record to support a conclusion that she devoted at least 50% of her time at work on such activities." R.R. at 452a. In support of the conclusion that Trotman was not a professional employee, the Secretary also noted that Trotman was not employed within the scope of any of the educator certificates she possessed, nor were the staff she supervised required to have educator certificates. The Secretary also made findings regarding the fact that Trotman did not have a contract with CCIU, was not required to undergo annual performance evaluations applicable to professional employees under the school code, and the children at the daycare center were not subject to attendance requirements and their participation in the program did not impact their future ability to be placed in K-12 programs.

## II. ISSUES

There are two interconnected issues raised before this Court for consideration on appeal. We consider whether the Secretary properly concluded that she did not have jurisdiction to hear Trotman's appeal and whether the Secretary's findings of facts in support of such conclusion were based on substantial evidence.

Trotman argues that the Secretary erred in concluding that Trotman was not a professional employee. In support, she contends that the Secretary improperly relied upon facts not relevant to the plain statutory language defining professional employees and teachers, including that Trotman did not have an employment

4

contract with CCIU, did not use her teaching certificates in her position, and the teachers she supervised did not require teaching certificates. Trotman contends that the sole deciding factor should have been the determination of whether she devoted at least 50% of her time to direct educational activities. With respect to such inquiry, she contends that the Secretary did not have substantial evidence to support a finding that she did not devote at least 50% of her time to direct educational activities, due to her testimony that "70 to 75 percent of [her] time [was spent] either directly interacting with children in learning experiences, or supervising staff, or coaching/mentoring." R.R. at 93a-94a; Pet'r Br. at 24-25. She contends that her supervisor was unable to state that she devoted less than 50% of her time to direct educational activities, and the other evidence was not sufficient to support such finding either.

CCIU contends that the Secretary did not err in finding that she lacked jurisdiction to hear Trotman's appeal. CCIU argues that the factors relied upon by the Secretary were proper for determining whether Trotman qualified as a professional employee under the School Code. It further argues that the Secretary relied upon substantial evidence in determining that Trotman did not devote at least 50% of her time to direct educational activities. In support, it argues that the Secretary credited documentary evidence, such as Trotman's job description and the infant and toddler room schedules and did not credit Trotman's testimony as to the allocation of her time. Therefore, CCIU states that the Secretary's determination is one as to credibility, which this Court should not disturb.

### III. DISCUSSION

Pursuant to the Tenure Provisions, professional employees of public schools are afforded various protections of tenure. Tenured employees have a right

to a pretermination hearing under Section 1127 of the School Code, and a right of appeal to the Secretary following dismissal under Section 1131. Section 1101 of the School Code defines professional employees. Section 1101 provides:

> The term "professional employe" shall include those who are certificated as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals, directors of career and technical education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program specialists, school librarians, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists and school nurses.

24 P.S. § 11-1101. Section 1141 of the School Code further defines "teacher" germane to Section 1101:

> "Teacher" shall include all professional employes and temporary professional employes, who devote fifty per centum (50%) of their time, or more, to teaching or other direct educational activities, such as classroom teachers, demonstration teachers, museum teachers, counsellors, librarians, school nurses, dental hygienists, home and school visitors, and other similar professional employes and temporary professional employes, certificated in accordance with the qualifications established by the State Board of Education.

24 P.S. § 11-1141. Substantial evidence is evidence that a reasonable person would accept as sufficient to establish the factual determination at issue. *Hite v. City of McKeesport*, 312 A.3d 420, 424 n.8 (Pa. Cmwlth. 2024). It is within the discretion of the factfinder to make credibility determinations, and such determinations are not to be disturbed on appeal. *Slater v. Sch. Dist. of Phila.*, 309 A.3d 1144, 1158 (Pa. Cmwlth. 2024).

6

We constrain our discussion to the Secretary's conclusion that Trotman was not a professional employee as she did not devote at least 50% of her time to direct educational activities, as it is dispositive. The Secretary did not err in concluding that she lacked jurisdiction to hear the merits of Trotman's appeal on the basis that Trotman was not a professional employee, namely a teacher, under the School Code. The law is clear: if she did not devote at least 50% of her work time to direct educational activities, she was not a professional employee entitled to tenure under the School Code. Therefore, we address the substantial evidence argument raised by Trotman to determine whether the Secretary erred in concluding that she did not have jurisdiction.

Indeed, the bulk of the documentary evidence provided regarding the daycare's classroom schedule and Trotman's duties as director support a finding that she did not devote at least 50% of her time to direct educational activities. The Secretary declined to credit the contrary evidence, namely Trotman's testimony that "70 to 75 percent of [her] time [was spent] either directly interacting with children in learning experiences, or supervising staff, or coaching/mentoring."[5,6] R.R. at 93a-94a. Rather the Secretary relied upon Trotman's job description, policies and

---

[5] *Forest Area Sch. Dist. v. Shoup*, 621 A.2d 1121, 1124 (Pa. Cmwlth. 1993) ("The Secretary is not required to make specific findings as to the credibility of each and every witness where the decision itself reflects which witnesses were believed and upon whose testimony the Secretary relied."). Here the decision is clear in that the Secretary did not credit Trotman's testimony with respect to her estimate of how she spent her time. Rather, the Secretary credited specific details of her testimony regarding her tasks, as well as the documentary evidence provided by both Trotman and CCIU.

[6] It is also noteworthy that, contrary to Trotman's contention on appeal, this is not clear testimony that she devotes 70 to 75% of her time to direct educational activities. Indeed, supervising staff, coaching, and mentoring may include activities that are not directly educational. With respect to her direct interaction with children, Trotman testified that "[she] would spend direct time with the children in the hours when I was covering other staff or covering the classroom due to child-teacher ratio." R.R. at 380a.

7

manuals applicable to the daycare center, and schedules[7] for the infant and toddler programs.[8] As credibility determinations rest solely with the factfinder, in this case the Secretary, and the Secretary did not credit Trotman's testimony with respect to the allocation of her work, we must defer to that determination. The evidence relied upon by the Secretary in making its determination that Trotman did not devote at least 50% of her time to direct educational activities was indeed sufficient that a reasonable person would accept to determine that fact.[9] Therefore, the Secretary properly dismissed Trotman's appeal based upon its conclusion that it did not have jurisdiction to hear the merits of the appeal. Accordingly, we affirm the Secretary's order.

---

[7] While Trotman claimed in her testimony that the daycare center did not have such schedules during her employment, she has not challenged the relevance or competence of such evidence on appeal. R.R. at 383a. Trotman denied recognizing the toddler schedule, but testified that she recognized the infant schedule as a "general framework." *Id.* at 378a, 380a. Further, the Secretary credited the schedules and the contents therein in her Findings of Fact but did not credit Trotman's testimony that no such schedules were followed during her employment, which is a credibility determination not to be disturbed by this Court.

[8] *See* Findings of Fact 12-40, outlining Trotman's various responsibilities at CCIU. R.R. at 441a-47a. The Secretary highlights the non-educational duties of Trotman without crediting Trotman's testimony that she devotes 70-75% of her time towards "directly interacting with children in learning experiences, or supervising staff, or coaching/mentoring." R.R. at 93a-94a. These findings are supported by the record as it was before the Secretary. Based upon these findings, the Secretary found that the record did not support a conclusion that Trotman devoted more than 50% of her time to direct educational activities.

[9] While the Secretary only clearly states this finding/conclusion in the Discussion section of her Order and Opinion, rather than the Findings of Fact, this finding is, by its nature, a factual determination.

## IV. CONCLUSION

For the foregoing reasons, the order of the Secretary is affirmed.

_____
MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heather Trotman,                     :

              Petitioner      :

                            :

             v.                :    No. 188 C.D. 2025

                            :

Chester County Intermediate Unit   :

(Pennsylvania Department of       :

Education),                     :

             Respondent    :

# O R D E R

AND NOW, this 4th day of November 2025, the January 15, 2025 order of the Secretary of Education in the above-captioned matter is hereby AFFIRMED.

 

                              _____

                              MATTHEW S. WOLF, Judge